UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

____

JAMES ADAMS,

        Plaintiff,

v.

UNKNOWN KEMP et al.,

        Defendants.

Case No. 2:23-cv-27

Honorable Paul L. Maloney

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about

which he complains occurred at that facility. Plaintiff sues Law Librarian Unknown Kemp, as well as A. Phelps.

Plaintiff alleges that he is housed in segregation at AMF since August of 2022. (ECF No. 1, PageID.3.) He has been "filing paperwork, lawsuits[, and his] criminal case." (*Id.*) Plaintiff tried to get help from a legal writer, who told Plaintiff "that he could not do certain issues because the lawyers that he has to go through said he could not file certain issues." (*Id.*) Plaintiff tried to obtain cases, such as *People v. Henry*, and federal cases "to [strengthen his] issues." (*Id.*) Defendant Kemp told Plaintiff that he could not get those cases "because they are not on Attachment A" in MDOC Policy Directive 05.03.115. (*Id.*) Defendant Kemp told Plaintiff that he would have to pay for each case that he wanted. (*Id.*)

Plaintiff contends his access to the courts has been hindered because he "should be free to all law library materials, except for the computer because of being in segregation." (*Id.*) He asserts that he has to "now go in debt" every time he needs a case. (*Id.*) Plaintiff states that he "lost one of [his] civil lawsuits because [he] could not properly file [his] issues [and he] lost [his] criminal case because [he] could not get cases []or the right motion documents to file." (*Id.*)

Based upon the foregoing, the Court construes Plaintiff's complaint to assert a First Amendment access to the courts claim, as well as a Fourteenth Amendment equal protection claim premised upon his statement that inmates in segregation are treated differently than those in general population with respect to access to legal materials. Plaintiff wants the Court "to demand a change" and seeks "re[i]mb[ursement]" because he lost his civil and criminal cases. (*Id.*, PageID.4.)

II.  **Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

     A.     **Claims Against Defendant Phelps**

Although Plaintiff names A. Phelps as a Defendant, Plaintiff does not make any factual allegations against A. Phelps. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention A. Phelps in the body of his complaint. His allegations fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Any claims against A. Phelps, therefore, are properly dismissed.

      **B.**      **Claims Against Defendant Kemp**

           **1.**      **First Amendment Access to the Courts Claim**

The Court has construed Plaintiff's complaint to assert a First Amendment access to the courts claim against Defendant Kemp. As set forth above, Plaintiff alleges that he has been unable to access certain cases while in segregation at AMF. Plaintiff contends that he lost a civil lawsuit and his criminal case because of his inability to access such cases. (ECF No. 1, PageID.3.)

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

5

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415. In order to state a viable claim for interference with access to the courts, Plaintiff must show actual injury to nonfrivolous pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999).

Here, although Plaintiff asserts that he was unsuccessful in a civil lawsuit and his criminal case because of his limited access to legal materials, his complaint utterly fails to describe the "underlying cause of action and its lost remedy" in a way that is "sufficient to give fair notice" to Defendant Kemp. *See Christopher*, 536 U.S. at 415. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Moreover, to the extent Plaintiff contends that Defendant

Kemp impeded his access to the courts by refusing to provide free copies of case law, the Sixth Circuit has repeatedly held that the constitutional right of access to the courts does not entitle prisoners to free access to photocopying machinery. *See, e.g., Courtemanche v. Gregels*, 79 F. App'x 115, 117 (6th Cir. 2003) (noting that "the right of access does not include a per se right to photocopies in whatever amount a prisoner requests"); *Bell-Bey, v. Toombs*, No. 93-2405, 1994 WL 105900 (6th Cir. March 28, 1994) (indicating that "the law is settled that an inmate does not enjoy a federal constitutional right to unlimited free photocopying services"); *Hawk v. Vidor*, No. 92-2349, 1993 WL 94007, *1 (6th Cir. March 31, 1993) (concluding that "the right to have access to the courts is not interpreted as requiring unlimited access to photocopiers"); *Al-Jabbar v. Dutton*, No. 92-5004, 1992 WL 107016, at *1 (noting that "a prisoner's right of access to the courts does not guarantee him unlimited photocopying at the state's expense") (6th Cir. May 19, 1992); *Bond v. Dunn*, No. 89-6181, 1989 WL 149988, at *1 (6th Cir. Dec. 12, 1989) (stating that "[t]he constitutional right of access to the courts does not require that prison officials provide inmates free access to photocopying machinery"); *Fazzini v. Gluch*, No. 88-2147, 1989 WL 54125, *2 (6th Cir. May 23, 1989) (stating that "[t]he right of access to the courts does not require that prison officials provide free, unlimited access to photocopy machines"). Plaintiff's First Amendment access to the courts claim against Defendant Kemp will, therefore, be dismissed.

### 2. Fourteenth Amendment Equal Protection Claim

The Court has also construed Plaintiff's complaint to assert a Fourteenth Amendment equal protection claim against Defendant Kemp. Plaintiff avers that inmates in segregation "[are] being treated different[ly] from general population." (ECF No. 1, PageID.3.) He states that "if general population can receive cases, segregation should be able to." (*Id.*)

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The threshold element

of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (noting that "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (noting that "a[] plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'"). Plaintiff fails to make this threshold showing.[1] Prisoners within segregation are not similarly situated to those in general population. *See Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006) (affirming dismissal of prisoner's equal protection claim because administrative segregation inmates are not similarly situated to general population inmates for purposes of an equal protection analysis); *Dupont v. Dubois*, No. 96-1459, 1996 WL 649340, at *3 (1st Cir. Nov. 6, 1996) (holding that inmate's 'bare allegation' regarding the more restrictive law library access rules placed on Departmental Disciplinary Unit (DDU) inmates compared to

---

[1] Moreover, to the extent Plaintiff bases an equal protection claim on his inability to receive free copies of case law, the Court notes that MDOC policy provides that "[p]risoners shall be provided photocopying services to obtain one copy of an item needed for legal research. . . . A fee of 10 cents shall be charged for each page copied." *See* MDOC Policy Directive 05.03.116 ¶ N (eff. Apr. 5, 2021). The policy does not differentiate between inmates in segregation and inmates in general population.

other inmates in disciplinary segregation did not state an equal protection claim where he failed to establish that the other inmates he referred to were situated similarly enough to DDU inmates to require similar law library rights); *Smith v. Crews*, No. 5:21-cv-P35-TBR, 2021 WL 3621705, at *2 (W.D. Ky. Aug. 16, 2021) (dismissing inmate's equal protection claim because his complaint "fail[ed] to provide allegations demonstrating that segregated prisoners are similarly situated enough to general population prisoners to require similar law library rights"). The Court, therefore, will dismiss Plaintiff's Fourteenth Amendment equal protection claim against Defendant Kemp.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  March 15, 2023          /s/ Paul L. Maloney
                                Paul L. Maloney
                                United States District Judge